*In the Matter of the Petition of* CHARLES H. PAYSON *for a Writ of Habeas Corpus.*

PETITION FOR HABEAS CORPUS, *No Relief Under, When.* Where L., desiring and intending to convey certain real estate to M., requests P. to draft and prepare a deed for that purpose, and P., pretending to do so, wrongfully and fraudulently drafts a deed conveying the property to himself, and then by false pretenses obtains the signature of L. to said deed, and by like false pretenses obtains and retains the possession of such deed, ostensibly for the purpose of having it recorded for L., but really to have it recorded for himself, and he is afterward prosecuted criminally under §§ 94 and 84 of the crimes act, for obtaining said signature under the said circumstances, and he is convicted and sentenced to imprisonment in the penitentiary, and the sheriff holds him in custody under said conviction and sentence, and he then applies to the supreme court to be discharged from such custody on a writ of *habeas corpus*, claiming that said sentence is void, on the ground that the acts for which he was prosecuted, convicted and sentenced are not punishable under the laws of Kansas, *held*, that said sentence is not void, and therefore that the applicant is not illegally restrained of his liberty, and therefore that he cannot be discharged on *habeas corpus*.

*Original Proceedings in Habeas Corpus.*

PETITION filed in this court, on May 15, 1880, on behalf of *Charles H. Payson*, for a writ of *habeas corpus*. The petition states in substance the following facts:

Your petitioner shows that he is illegally restrained of his liberty by A. T. Shenneman, sheriff of Cowley county, Kansas, at the jail of said county, in the city Winfield, therein, and that said sheriff threatens and is about to convey the petitioner and deliver him to the warden of the penitentiary of said state; that the pretended cause of said restraint is, that on the 10th day of May, 1880, the same being one of the judicial days of the May term, 1880, of the district court of Cowley county, your petitioner was tried for an alleged felony, as will more fully appear from a copy of the information hereto attached, and made a part hereof, in an action wherein the State of Kansas was plaintiff and your petitioner was defendant; that upon said trial the defendant was convicted, and on the 13th day of May, 1880, the said court rendered judgment against the petitioner, that he be imprisoned in the penitentiary of said state for the term of five years, at hard labor, as will more fully appear from a copy

of said judgment, hereto attached and made a part hereof; and that the petitioner is held by said sheriff in pursuance of said judgment.

The petitioner further says that said restraint is illegal in this: that there is no law authorizing any punishment for the offense charged in said information, and the district court had no jurisdiction to render the judgment aforesaid.

The petition closed with the common prayer for the issuance of the writ on behalf of the petitioner, and that upon the hearing herein, he might be discharged from custody.

A copy of the body of the information herein is as follows, to wit:

"That on the 26th day of January, A. D. 1880, and for a long time previous thereto, one Lena McNeil was the owner in fee simple of the following-described real property, to wit: Lot No. 8, in block No. 167, in the city of Winfield, Cowley county, state of Kansas; that the said Lena McNeil, desiring and intending to convey said property to her mother, Martha E. McNeil, then, and several days theretofore, requested one Charles H. Payson, an attorney at law, to draft and prepare a deed, conveying said property from the said Lena McNeil to said Martha E. McNeil; that on said 26th day of January, A. D. 1880, at and within the county aforesaid, the said Charles H. Payson, with the intent to cheat and defraud the said Lena McNeil of said property, unlawfully, feloniously and designedly did obtain the signature of the said Lena McNeil to a written instrument, viz., a deed of general warranty from the said Lena McNeil to the said Charles H. Payson, of date January 26, A. D. 1880, being and purporting to be the act of the said Lena McNeil, by which said deed, all the right, title and interest of the said Lena McNeil in and to said property was and purported to be transferred and conveyed to said Charles H. Payson, by then and there unlawfully, knowingly and falsely pretending to the said Lena McNeil that said written instrument was a deed drafted and prepared by him, the said Charles H. Payson, in accordance with the request of the said Lena McNeil, as aforesaid, conveying the right, title and interest of the said Lena McNeil in and to said property to said Martha E. McNeil; by means of which said false pretense, the said Lena McNeil, then and there believing and relying on said false pretense as being true, was then and there induced to subscribe her name to said written instrument as aforesaid, the possession of which

said written instrument the said Charles H. Payson then and there obtained from the said Lena McNeil for the purpose of having the same recorded in the office of the register of deeds of said county, the said Lena McNeil then believing, as aforesaid, that said written instrument was a deed conveying said property from herself to said Martha E. McNeil, the possession of which said written instrument the said Charles H. Payson has ever since retained; whereas, in truth and in fact, as the said Charles H. Payson then and there well knew, said written instrument was not a deed conveying the right, title and interest of the said Lena McNeil in and to said property to said Martha E. McNeil, but was the written instrument above set forth, conveying and purporting to convey all the right, title and interest of the said Lena McNeil in and to said property to the said Charles H. Payson as aforesaid."

Upon the foregoing petition, the writ prayed for was issued by the Chief Justice of the Supreme Court, made returnable on the 17th day of May, 1880, and was duly served upon the said A. T. Shenneman, sheriff, to which he made a return in effect that he held the said Charles H. Payson under and by virtue of the final judgment and order of the district court of Cowley county, as stated by the petitioner, and that he had the body of the said Charles H. Payson before the court.

The case was argued orally by Messrs. *W. C. Webb* and *C. Coldwell*, for the petitioner, and by Mr. *E. S. Torrance*, county attorney of Cowley county, for The State. May 20, 1880, the opinion herein was filed.

The opinion of the court was delivered by

VALENTINE, J.: This is an action of *habeas corpus*, brought in this court by Charles H. Payson against A. T. Shenneman, sheriff of Cowley county, charging the defendant with unlawfully and illegally restraining the plaintiff of his liberty. It appears from the application of the plaintiff and the return of the defendant (and the truth of the return is admitted by the plaintiff), that the plaintiff has been sentenced to imprisonment in the penitentiary by the district court of said Cowley county, and that the defendant holds the plaintiff in custody under such sentence.

The only question now presented to this court is, whether said sentence is void, or not. If it is void, the plaintiff is of course illegally restrained of his liberty; but if it is valid, then it is admitted that he is legally and rightfully restrained of his liberty. The question is not whether the sentence is irregular only, or voidable; it is not whether the sentence might not be set aside or reversed for error, if the case were brought to this court on appeal; but it is whether such sentence is absolutely void, under all circumstances, if attacked collaterally as well as if attacked directly. The plaintiff, of course, claims that the sentence is void; and he makes this claim upon the sole ground that the acts for which he was sentenced are not punishable under the laws of the state of Kansas.

The plaintiff was charged, tried, convicted and sentenced for wrongfully obtaining the signature of Lena McNeil to a certain deed of conveyance of real estate, under the following circumstances, to wit: The said Lena McNeil, desiring and intending to convey said real estate to her mother, Martha E. McNeil, requested the plaintiff to draft and prepare a deed for that purpose, and he, pretending to do so, wrongfully and fraudulently drafted a deed conveying the property to himself; and then, by false pretenses, obtained her signature to such deed, and by like false pretenses, obtained and retained the possession of the deed, ostensibly for the purpose of having it recorded for Lena McNeil, but really to have it recorded for himself.

The information states the facts much more fully than we have stated them.

The statutes under which this prosecution was had read as follows:

"Every person who, with intent to cheat or defraud another, shall, designedly, by means of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, right in action, or any other valuable thing or effects whatsoever, upon conviction thereof shall be punished in the same manner and to the same extent as for feloniously stealing the money, property or thing [so] obtained." (Crimes Act, § 94.)

"If any person steal or embezzle any will of real or personal property, or any deed or other instrument of .writing, being or purporting to be the act of another, by which any right or interest in real or personal property shall be or purport to be assured, transferred or conveyed, or in any way changed or affected, shall be adjudged guilty of grand larceny, without reference to the value of the instrument so stolen ·or embezzled, and shall be punished by confinement and hard labor not exceeding five years, or in the county jail not less than six months." (Crimes Act, § 84; Comp. Laws of 1879, pp. 338, 339.)

The plaintiff claims that he was prosecuted and sentenced merely for obtaining a signature; that a signature cannot be stolen, and therefore that there is no punishment fixed for the supposed offense for which he was sentenced, and therefore that the sentence is void. He claims that that portion of § 94 of the crimes act which relates to obtaining a signature, is nugatory and worthless, and that the legislature committed a great and palpable blunder in enacting it and in attempting to create an offense without providing any punishment for such intended offense. These statutes, however, were borrowed from Missouri; they have been on our statute books for nearly twenty-five years; they have been enacted and reenacted by successive legislatures, and the able commission appointed by the justices of the supreme court in 1877, to revise the laws of the state, recommended their reënactment, substantially as they were, and almost *verbatim*. (Sections 161 and 88 of the chapter on public offenses of the Commissioners' Report.) This is some evidence that no very great legislative blunder was committed.

The plaintiff, however, was not prosecuted and sentenced for merely obtaining a signature. It was for obtaining a signature to a "written instrument," a "valuable thing," and also for obtaining this written instrument, this valuable thing. And the law prescribes a punishment for stealing such things. The information sets forth the alleged offense in great detail, and no claim is made that the information is defective in any respect. Said § 94 does not pretend to make the mere obtaining of a signature an offense; nor does any other section

of the statute do so. The obtaining of a signature to a blank piece of paper, if nothing further were done, would not constitute any offense. Nor would the obtaining of a signature to a deed, or to any other written instrument, constitute an offense, if such written instrument were never delivered. In order that the obtaining of a signature shall constitute an offense, it is necessary that the signature be attached to some written instrument of value, and that the written instrument itself be obtained along with the signature. (*Fenton v. The People,* 4 Hill, 126.) A signature cannot be obtained unless the written instrument to which it is attached is also obtained. The legislature evidently had no thought of a signature being obtained separate from a written instrument. They had the whole matter in contemplation when they enacted the law—the signature, and the written instrument—the signature, and the writing above it to make it valuable. Their language is, "obtain the signature of any person *to any written instrument;*" and a signature with the writing above it, to make it valuable, may be stolen. All that a deed is, is the signature with the writing above it to make it valuable. Indeed, neither the signature nor the writing would be of any value if they were separated. And both together would be of no value, unless *obtained* by the party to whom they were apparently executed, or for whom they were apparently designed, or, in other words, unless they were apparently *delivered* to the party to whom they were apparently executed. The statute evidently has a broader meaning than the plaintiff is willing to give to it. If we should construe it as the plaintiff desires that we should, we would make the statute speak nonsense, which we should not do, provided it will bear any reasonable construction, which we think it will. We think that the construction given to the statute by the district court is the most natural and reasonable.

We think the imprisonment of the plaintiff is legal, and he will therefore be remanded to the custody of the said sheriff of Cowley county.

All the Justices concurring.