## In the matter of the Petition of W. W. DILL, for a Writ of Habeas Corpus.

HABEAS CORPUS; *Code, Construed; Contempt of Court, Direct and Constructive; Prayer, Granted.* Section 671 of chapter 80 of the Compiled Laws does not prohibit a court having jurisdiction in proceedings by *habeas corpus* from examining the judgment or commitment of another court under which a person is restrained of his liberty; and if upon such examination it appears and the record shows that the court rendering the judgment was without authority to render it under some circumstances, or if the charge on which he was convicted and imprisoned does not constitute an offense for which punishment can be inflicted, or that the court had exceeded its authority, from discharging him.

To constitute a direct contempt of court, there must be some disobedience to its order, judgment or process, or some open and intended disrespect to the court or its officers in the presence of the court, or such conduct in or near the court as to interrupt or interfere with its proceedings, or with the administration of justice.

To constitute a constructive contempt of court, some act must be done, not in the presence of the court or judge, that tends to obstruct the administration of justice, or bring the court, or judge, or the administration of justice, into disrespect.

D. executed his recognizance to appear in the district court at a certain term, and submit to a trial on a criminal charge pending against him in such court. He did not appear at the term of the court at which he was recognized, but absented himself from the county where the court was held. Proceedings were taken against him for a contempt, and he was convicted and imprisoned. *Held,* That the facts stated in the charge against him, on which he was convicted, do not constitute a contempt for which he can be punished by fine or imprisonment. The judgment rendered was not warranted by law, and the court was without jurisdiction to render it, and the imprisonment under it is illegal, and the petitioner is entitled by proceedings in *habeas corpus* to be discharged from imprisonment.

### *Original Proceedings in Habeas Corpus.*

PETITION for a writ of *habeas corpus,* filed in this court May 1, 1884, by *W. W. Dill* against *John Fisher,* as sheriff and jailer of Sedgwick county. The material facts are stated in the opinion herein, filed November 28, 1884.

*Hatton, Ruggles & Parsons,* for petitioner:

The only question to be considered by this court in this case is that of jurisdiction. Did the court below have jurisdiction of the subject-matter, or act, which it is claimed constitutes the contempt? Or, in other words, is the act done by the petitioner a contempt of court? The third subdivision of § 671 of the civil code limits the power of courts in this state to inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him upon *habeas corpus,* as follows:

"*Third,* For any contempt of any court, officer, or body having authority to commit."

What then is the test of the jurisdiction or "authority to

commit," as expressed in the statute just mentioned? Does it mean the right or power in the abstract to commit for contempt? Or does it refer to the act or acts which create the contempt, so that if the act or acts complained of do not in law constitute a contempt, there will be no jurisdiction or authority over the subject-matter? The latter is, we think, the true theory. If it is not, a court having general jurisdiction and inherent power to commit for contempt, also has jurisdiction and authority to say what act or acts constitute contempt; and this places in a court or judge a power which is not subject to review or correction by any court in any manner; and any person can be deprived of his liberty at the mere whim or caprice of the judge or court, beyond any redress.

From an early day in the history of our country, the power of a court to judge, determine and punish contempts of its power and dignity has been subject to review by higher courts on *habeas corpus,* for the purpose of determining, as a jurisdictional question, whether or not the act done is in law a contempt, and if not to discharge the petitioner. We think such has been recognized as the true rule in this country and in England since the *Bushnell Case,* in 1677, reported in Vaughn's Report, 135. In that case the petitioner, being a juryman, was committed for contempt, for refusing to return a verdict of guilty, under the direction of the court, and was discharged for the reason that his refusal to return or consent to the finding of such a verdict is not a contempt.

(See *Ex parte Summers,* 5 Ired. 149, 153; *The State v. Galloway,* 5 Coldw. 326, 336; *The State, ex rel., v. Seaton,* 16 N. W. Rep. 736; *Ex parte Hardy,* Sup. Ct. Ala. [13 Cent. L. J. 50;] *Tyler v. Connelly,* Sup. Ct. Colo. [2 Pacific Rep.] 414; Hurd on Habeas Corpus, 405; 20 Am. Law Reg., N. S., 382, and cases cited.)

We think that the words "having authority to commit," as used in the third subdivision of § 671 of the code, in the light of the principle established by the foregoing authorities, should not be construed to mean the power or jurisdiction to commit for contempt in the abstract, but should be construed

to mean the jurisdiction or having authority to commit with reference to the particular act or thing done and complained of, so that if the act or thing done does not, in law, constitute a contempt, the court or judge would be without authority — jurisdiction to commit — and the commitment void.

Do the facts that the petitioner failed to be present when the cases against him were called for trial, that his recognizances were forfeited, and that he subsequently returned and surrendered himself to his sureties, and was then by them turned over to the custody of the sheriff, and immediately entered into a new recognizance for his appearance at the next term of the court to answer the charges against him, constitute a contempt, and give the court jurisdiction — authority to commit him for so doing? We think not. He did nothing but what the statutes of our state say he may do. We think it would be an outrage of the grossest kind to permit or authorize a person to do a certain thing, by statute, and then visit upon him summary punishment for contempt for so doing.

The forfeiting of a recognizance has never been held to be a contempt, and it cannot be, unless made so by statute. Our legislature has by express statute authorized courts and judges to punish for contempt, and in all cases where it has conferred such power, the courts already possessed such power inherent to their existence.

By §§ 152 and 156 of the criminal code the legislature has provided just what shall be done in case of a forfeited recognizance, but it has not authorized the court to punish for contempt for such forfeiture, as it has done in the matters named in the civil code.

The petitioner went to the bedside of his sister, whom he was informed by telegram was dangerously ill, and in obedience to summons, and not for the purpose of escaping from the trial of the cases against him, or the punishment in case he should be found guilty; for as soon as he returned he surrendered himself to his sureties, for the purpose of being himself surrendered to the sheriff. He was so surrendered, and then entered into a new recognizance for his appearance

at the next term of court, thus voluntarily putting himself into the hands of the law, and not seeking to evade the law; and this, §151 of the criminal code provides that he may do.

·Only one case can be found in the books that touches upon the subject at all — the case of *Ingle v. The State*, 8 Blackf. 574. In that case, "A., being indicted for an assault and battery, and bound by a recognizance to answer the charge, was advised by an attorney that if he (A.) could not procure a continuance of the cause on an affidavit, he then could escape and ·forfeit his recognizance, which would work a continuance of said cause until the next term at a trifling cost." *Held*, That the attorney was not for giving said advice guilty of a contempt of court. We are at a loss to see why this case, in principle, does not settle the case at bar. The duty and obligation of an attorney to the court are much greater than that of a defendant. By the best logic in the world, if the attorney was not guilty of contempt in advising his client that he could forfeit his recognizance and thus obtain a continuance of the case, his client would not be in contempt for so doing; for if such act on the part of the defendant was a contempt, the attorney advising it must surely be guilty of contempt as well.

To constitute a direct contempt of court there must be some disobedience of its process, or of some judgment, decree, or order; some open disrespect manifested to the court, or to some of its officers or judges, in its presence; or such disrespectful, noisy or tumultuous conduct in or near the court, as to bring the court or judge into disrespect, or which in some way tends to obstruct or impede the administration of justice; and to constitute a constructive contempt, something must be done, not in the presence of the court, its officers, or judge, that tends to bring the court, judge, or the administration of justice, into disrespect, or to obstruct the due administration of justice. The petitioner did none of these things. A recognizance ·in a criminal action is not an order, mandate, judgment or decree of court, nor is it entered into by virtue of an order of the court. It is simply a bond that a defendant is permitted to give, that he may ·be released from imprisonment, and this

right is granted by our constitution and laws; he is not compelled to give it, but he simply may if he can and wishes. And the state having adopted such means as was thought best to prevent the abuse of the right, no other can be tacked on through punishment for contempt.

The various writers on this subject have entered more or less into detail of what acts do or do not constitute contempt, and seem in the aggregate to have covered the whole ground; but none of them have thought that the forfeiting of a recognizance in a criminal cause is such an offense. We call the attention of the court to some of them, as follows: Article on "Criminal Contempt," by Lyman D. Thompson, in Criminal Law Magazine for March, 1884, p. 173; article on "Contempt of Court," by Charles Chauncey, in 20 Am. Law. Reg., N. S., p. 81, *et seq.*, p. 289, *et seq.*; 19 Cent. L. J. 73, note; 2 Bishop's Cr. Law (7th ed.), §§ 250–267; Wharton's Cr. Pl. and Pr. (8th ed.), § 949, *et seq.*; Barbour's Cr. Law (2d ed.), 249, 502; Harris's Cr. Law (Force), 88; *Ex parte Wright*, 65 Ind. 505, 509.

*W. A. Johnston*, attorney general, for respondent; *Edwin A. Austin*, of counsel:

The respondent contends that, it appearing by the record that the petitioner is in custody upon process issued on a final judgment of a court of competent jurisdiction, and that he is in custody for contempt of a court having authority to commit for contempt, the legality of the judgment or the final process is not open to inquiry, or for consideration in *habeas corpus* proceedings.

This court has repeatedly held that § 671 of the civil code means exactly what it says, and that in *habeas corpus* proceedings only questions of power, and not questions of error, can be considered. (*Ex parte Nye*, 8 Kas. 99; *In re Goldsmith*, 24 id. 757; *In re Payson*, 23 id. 757; *In re Petty*, 22 id. 447.)

With reference to the power of the district court to commit for contempt, and to fine the defendant in the manner and in

43—32 KAS.

the amount it did, we cite the case of *In re Millington, Petitioner*, 24 Kas. 214.

It is admitted in this case that the district court of Sedgwick county is a court having the inherent general power to commit for contempt. Then, the jurisdiction of the court to commit for contempt being admitted, the prohibition of the statute precludes this court from inquiry into the legality of the judgment rendered, or the process issued, and under which the petitioner is now held. Whether certain facts constitute a contempt, or not, is a question of law, the decision of the court upon which can only be reviewed on appeal, and cannot be considered in *habeas corpus* proceedings. If the court erred in finding that certain acts constitute contempt, when in law they do not, it is a matter of law in which the court erred, which can be corrected by this court on appeal, and does not defeat the inherent power of the court to commit for contempt.

Would counsel contend that a person convicted of forgery, or of any other criminal offense of which the district court has jurisdiction, can attack that conviction collaterally by *habeas corpus* proceedings, on the ground that the facts upon which he was convicted do not constitute the crime with which he was charged and convicted? Can this court, on *habeas corpus* proceedings, with § 671 before it, inquire whether the court erred in finding that certain acts constitute an assault, or in instructing the jury that certain acts constitute an assault, and discharge the petitioner from custody under process issued on a judgment rendered on such finding or instruction? It is to correct exactly such errors that an appeal is allowed.

Hurd on Habeas Corpus, after reviewing the authorities upon this subject, sums up as follows:

"Although, as will have been observed, there exists considerable conflict in the authorities on this subject, a careful consideration of them, I think, will result in the establishment of the following proposition: The commitment of a person under conviction of contempt, is equivalent to a commitment in execution, and the judgment of the court ordering the commitment cannot be inquired into, upon *habeas corpus*,

except to ascertain whether such court had jurisdiction to punish for contempt." (Hurd on Habeas Corpus, p. 414.)

The position of counsel for petitioner, however, is, that this court will determine as a jurisdictional fact whether an act done is in law a contempt, or not, and whether the court had authority to commit for the particular act or thing done. "If it were not so," he argues, "a court having general jurisdiction and inherent power to commit for contempt, also has jurisdiction and authority to say what act or acts constitute contempt; and this places in a court or judge a power which is not subject to review or correction by any court in any manner; and any person can be deprived of his liberty at the mere whim or caprice of the judge or court, beyond any redress." The force of this argument is, that the petitioner has no other remedy, which is not the fact.

That contempt of court is a specific criminal offense, has been repeatedly decided. (*New Orleans v. Steamship Co.*, 20 Wall. 392; *Fischer v. Hayes*, 6 Fed. Rep. 63; *Ex parte Crittenden*, 62 Cal. 534.)

This court has impliedly held to the same doctrine. (*Peyton's Appeal*, 12 Kas. 405.) An appeal may be taken by the defendant as a matter of right from any judgment against him in a criminal action. (Comp. Laws 1879; p. 764, § 281.)

Do the facts, as found and set forth in the judgment of the district court in the contempt proceedings, constitute contempt of court? The court is an instrument for the transaction of public business, as well as a tribunal demanding the respect of those having business with it. The court is charged with the duty of bringing that business to a conclusion; and in criminal matters it is charged with the duty of bringing to a speedy trial, as well as affording a speedy trial to every person charged with crime. Every person charged with crime is entitled to bail. This bail is simply another form of custody. The defendant on bail, exactly the same as the man in jail, is in custody, and at all times subject to the orders of the court. It is not simply the mere condition of his recognizance which requires him to be in the presence of the court and not depart

without leave, but it is the law which requires it, being the very essence of the fact of custody.

· The recognizance, like the walls of the jail, is simply an additional security that the defendant will at all times be subject to the order of the court, and will not become a fugitive from justice. It does not constitute a contract with the court, nor is it the measure of the duty of the defendant to the court, nor is it any limitation upon the court. The duty which the defendant owes to the court to attend in person for trial, or be represented by counsel, is a duty independent of the recognizance, existing before it, and is inherent in the fact of his being in custody.

The duty resting upon the court to proceed with the administration of justice gives rise to the necessity that every person charged with crime be present at all times, in order that the court may proceed. The underlying basis of all contempts is, that the act obstructs the court in the administration of justice. Whether it be an act of disorder, or disobedience, or disrespect in the presence of the court, or any act or conduct outside of court, which impedes the court, either by disobedience of or interference with its process, or any act calculated to deter or overawe the court, or any act in the nature of an attempt to thwart the court—they must all be measured by the same test, to be adjudged contempts; they must be such acts as tend to obstruct the court in the due and orderly administration of justice. That is the true test; therefore any act, especially of any person owing a duty to the court, the intent and effect of which is to directly obstruct the court in the administration of justice, is a contempt.

These principles are of easy application to the case at bar. It was the petitioner's duty to be present before the court. His presence was necessary to the administration of justice in the particular juncture. He purposely absented himself from the court with the intent, and producing the effect, of obstructing the court in the administration of justice.

Great stress is laid by counsel on the fact that no reported case can be found in which acts similar to the defendant's were

held to be a contempt punishable by attachment and fine. The language of Judge Dade in the case of *The Commonwealth v. Dandridge*, 2 Va. Cases, 408, 419, 420, seems to be extremely applicable in this connection. Dandridge had used insulting language to the judge while out of court. The same argument was made by the defense when Dandridge was attached, to show cause why he should not be committed for contempt. (See also 4 Bl. Com. 285; *Rex v. Clement*, 4 B. & Ald. 233.) Through all the adjudicated cases runs this guiding principle, that any and all acts calculated to impede, embarrass, or obstruct the court in the administration of justice, are punishable as contempts.

In the case at bar the facts are found by the court to be that the defendant, W. W. Dill, absented himself from the court at the time when it was his duty to be present, and that he did so for the purpose and with the effect of obstructing, thwarting and preventing the court in the administration of justice.

The duty to appear according to the terms of the recognizance is collateral to the duty of the defendant to be present under the law. The law as well as the recognizance both require his presence in court and to obey and abide any order or judgment it may make. ( *Lee v. The State*, 51 Miss. 665.) The court may punish him for a contemptuous disobedience and disregard of the court, for an obstruction of the administration of justice in the court, as well as assess against him the forfeiture under the recognizance.

The case in 8 Blackford is not decisive of this case. The mere giving of advice that if the court would not grant the defendant a continuance, "he could escape and forfeit his recognizance, which would work a continuance of said cause until the next term at a trifling cost," is not of itself an obstruction of the court. But the act of the defendant in absenting himself for the purpose of impeding the action of the court, is a criminal obstruction of the administration of justice, and punishable as a contempt.

The opinion of the court was delivered by

HURD, J.: W. W. Dill filed his petition in this court for a writ of *habeas corpus*, and by it shows the following facts: On the 12th day of April, 1884, the district court in and for Sedgwick county made and entered this order:

"*The State of Kansas v. W. W. Dill.*—It appearing that the defendant, being bound to be present in and not depart the court without leave, has departed from the court for the purpose of interrupting the proceedings of the court, it is ordered that an attachment issue for the person of the defendant, W. W. Dill, and that he be forthwith brought before the court or judge thereof, to show cause why he should not be punished as for a contempt of the court."

Under this order the petitioner was arrested, and on the 28th day of April, 1884, the court made findings and rendered judgment in such proceedings, as follows:

"*In the Matter of the Attachment of W. W. Dill for Contempt of Court.*

"Now on this 28th day of April, 1884, at the adjourned term of the court, comes W. W. Dill, in pursuance of the attachment heretofore issued, and the court having heard the explanations and admissions of the said W. W. Dill, and heard the evidence adduced, and being fully advised in the premises, finds the facts as follows:

"At the February term, 1884, the criminal action of the State of Kansas against said W. W. Dill, and the criminal action of the State of Kansas against the said W. W. Dill, together with one John Rawles (Rolls), were pending for trial and were ready to be proceeded with to trial on the first day of April, 1884, the said court being then and there regularly in session, and that the said W. W. Dill was then and there under recognizance in each of said actions to appear before said court at said term to answer the charge therein, being a charge for the unlawful sale of intoxicating liquors in the county of Sedgwick, State of Kansas.

"That the said criminal action of the State of Kansas against W. W. Dill and John Rawles (Rolls) was duly called for trial by the said court as against the said W. W. Dill, the first day of April, 1884.

"That the said W. W. Dill did not appear, and his attor-

neys being the same now representing him in this proceeding, then and there withdrew their appearance for him in said action, so that the trial of said action could not be proceeded with.

"That on said first day of April, 1884, and prior to the commencement of the court for that day, the said W. W. Dill, without leave of the court, departed from the county of Sedgwick, and kept himself so that he could not be found by the officers of the court.

"That the court continued in open session during the daytime, from said first day of April, 1884, to Monday, the 14th day of April, 1884.

"That said W. W. Dill so absented himself until Saturday night, the 12th day of April, 1884, at an hour when the court was not in session, and ascertained that the court would again be in session on April 14th; and on Sunday, April 13, 1884, the said W. W. Dill again absented himself from said county so that he could not be found until the court had taken an adjournment from April 14, 1884, to April 28, 1884; and soon after said adjournment had been taken, appeared and entered into a new recognizance for his appearance at the June term, 1884, of said court; that by means of the absence of said Dill, and the non-appearance of any counsel for him, the court was prevented from proceeding with the trial of said actions, and has been compelled to continue the same until the June term, 1884, of said court.

"The court finds also, from said facts, that said W. W. Dill so absented himself from said court for the purpose and with the intent of obstructing the court in proceeding with the trial of said actions, and for the purpose of obstructing and preventing the said court in the administration of justice, the court not being able to proceed with the trial of said actions, in the absence of said Dill and his attorney.

"The said Dill offers the following facts as an excuse for his absence: That he received a dispatch from Neolo, Iowa, on the 31st day of March, that his sister was dangerously ill, and that he went to see her in her sickness, and that on his return he had some business in Butler county, Kansas, and went there to attend the same, and returned to the city of Wichita when it was completed; that the said court was and is held in the city of Wichita, Sedgwick county, Kansas.

"The court holds said excuse insufficient, and finds the said W. W. Dill guilty of contempt of the court in the premises.

"The said W. W. Dill objects to the court proceeding in the

present matter, for the reason that it has no jurisdiction or authority in the premises, and objects to any punishment being inflicted for the same reason, and for the further reason that the facts found do not in law constitute a contempt.

"It is therefore considered, ordered and adjudged by the court that the said W. W. Dill pay to the State of Kansas a fine in the sum of three hundred dollars, and pay the costs of this proceeding, taxed at $——, and that he be committed to the jail of Sedgwick county, Kansas, until said fine and costs are paid. To which findings of fact and judgment the said W. W. Dill at the time excepted."

He states in his petition that under this judgment so rendered, he was arrested and committed to the jail of Sedgwick county, and is now imprisoned therein, and alleges that such imprisonment was and is illegal, because the act charged against him is not a contempt of court, and prays that a writ of *habeas corpus* be issued by this court, and that the legality of his imprisonment be inquired into, and he be discharged from imprisonment.

Under this petition a writ of *habeas corpus* was issued to the sheriff of Sedgwick county, who made his return to the writ that he holds the petitioner under a process issued in the proceedings, and under the judgment mentioned in the petition. We have here presented, the judgment or order of a court having jurisdiction to commit for contempt. In the outset of our inquiry and investigation we are confronted with § 671, ch. 80 of Comp. Laws, as follows :

"Sec. 671. No court or judge shall inquire into the legality of any judgment or process, whereby the party is in custody, or discharge him when the term of commitment has not expired in either of the cases following:

"*First,* Upon process issued by any court or judge of the United States, or where such court or judge has exclusive jurisdiction; or,

"*Second,* Upon any process issued on any final judgment of a court of competent jurisdiction; or,

"*Third,* For any contempt of any court, officer or body having authority to commit; but an order of commitment as for a contempt, upon proceedings to enforce the remedy of a party, is not included in any of the foregoing specifications.

"*Fourth*, Upon a warrant or commitment issued from the district court, or any other court of competent jurisdiction, upon an indictment or information."

The question is presented whether courts of this state are by this statute prohibited in proceedings by *habeas corpus* from examining the proceedings or record of another court in the cases mentioned in the statute, and if it is found upon such examination that the court rendering the judgment had no jurisdiction of the subject-matter, or of the petitioner, or had exceeded its authority, or that no crime or offense had been committed, discharging the petitioner, or whether his remedy is only by appeal to a higher court.

The counsel on behalf of the state contend that the statute referred to does prohibit courts from examining such records, and from discharging the accused in the cases mentioned in it, and refer to the following decisions of this court as sustaining their position: *Ex parte Phillips*, 7 Kas. 48. Phillips was charged by information with grand larceny. A jury was impaneled to try the cause, and the prosecuting attorney, not being ready to proceed, with the consent of the court withdrew a juror, and the cause was continued. Phillips brought proceedings for a writ of *habeas corpus*, and the writ was properly denied. The court, by BREWER, J., says:

"It is not every improper, illegal restraint of liberty that can be inquired into by *habeas corpus*. The limits beyond which no court can go, are fixed by statute."

And citing § 671, civil code, then adds:

"The plain import of this language forbids an inquiry (at this time) into the alleged errors in the proceedings of the district court. An information was filed; it still remains; no verdict or judgment was ever returned, or rendered thereon."

In *Ex parte Nye*, 8 Kas. 99, the court, by KINGMAN, C. J., refers to § 671 of the statute. The syllabus seems to hold as claimed by counsel, though the writ was refused because of a want of proper showing on the part of the petitioner.

In *In re Payson*, 23 Kas. 757, the petitioner was prosecuted criminally under §§ 94 and 84 of the crimes act, for obtaining

a signature to a deed by false pretenses, and convicted, sentenced, and imprisoned. He applied for a writ of *habeas corpus* on the ground that there was no law authorizing any punishment for the offense charged in the information, and that the court had no jurisdiction to render the judgment, and that the *sentence* was illegal and void. This court upon an examination of the record held that the sentence was not void, and remanded the petitioner, clearly recognizing the right of this court in *habeas corpus* proceedings to go behind the commitment and inquire into its cause, and determine its legality.

In *In re Petty*, 22 Kas. 477, the court holds that if a sentence and judgment are wholly void, and not merely irregular or erroneous, then the petitioner under proceedings by *habeas corpus* is entitled to his discharge; but if the verdict is valid, and the judgment is not void, but irregular merely, the prisoner cannot be relieved under proceedings by *habeas corpus,* clearly recognizing the right of this court to look into the record for the cause of the commitment, and if the judgment is void release the prisoner.

In *In re Goldsmith*, 24 Kas. 758, the petitioner was convicted before a justice of the peace and imprisoned, and applied to this court for a writ of *habeas corpus.* The court held that the process sufficiently showed that the justice had jurisdiction, and refused the writ.

In *In re Millington*, 24 Kas. 214, Millington was fined $200 for contempt, for certain publications in a newspaper, and adjudged to be imprisoned until the fine was paid. The court, after an examination of the record on which the commitment was issued, held that the court was not legally convened when the judgment was rendered, and therefore that the judgment was void and the commitment was illegal; and Millington was discharged under a writ of *habeas corpus.*

Proceedings by *habeas corpus* antedate the constitutions of the United States and of the several states. That part of § 9 of article 1 of the constitution of the United States, in these words: "The privilege of the writ of *habeas corpus* shall not be suspended, unless when in cases of rebellion or invasion

the public safety may require it," refers to the proceedings by *habeas corpus* as then known, established, and practiced, and is a limit on the law-making power of the United States, as well as of the several states, and they can pass no law that takes from the individual any of his rights under proceedings by *habeas corpus* as they existed when the constitution of the United States took effect.

The supreme court of the United States has defined the rights of persons in proceedings by *habeas corpus* under the constitution and laws of the United States, in *Ex parte Lange,* 18 Wall. 163. Lange was indicted under an act of congress "for stealing, purloining, embezzling and appropriating to his own use certain mail bags belonging to the post-office department." On a trial the jury found him guilty of appropriating to his own use mail bags "less in value than twenty-five dollars, the punishment for which offense as provided by that statute is imprisonment for not more than one year, *or* a fine of not less than ten dollars and not more than two hundred dollars." The court sentenced the prisoner under such conviction to one year's imprisonment *and* to pay two hundred dollars fine. The petitioner was committed to prison in execution of the sentence, and on the following day the fine was paid to the clerk of the court, who paid it into the treasury of the United States. On the day following, the prisoner was taken before that court on a *habeas corpus,* the same judge presiding, and an order entered vacating the former judgment, and the prisoner again sentenced to one year's imprisonment from that date. A second writ of *habeas corpus* was issued by the circuit judge, and after a hearing, the writ was discharged. A writ of *habeas corpus* was then issued by the supreme court. The court, by Miller, J., says:

"Disclaiming any assertion of a general power of review over the judgments of the inferior courts in criminal cases by the use of the writ of *habeas corpus* or otherwise, we proceed to examine the case as disclosed by the record of the circuit court and the return of the marshal, in whose custody the prisoner is found, to ascertain whether it shows that the court

below had any power to render the judgment by which the prisoner is held. . . .

"There is no more sacred duty of a court than, in a case properly before it, to maintain unimpaired those securities for the personal rights of the individual which have received for ages the sanction of the jurist and the statesman; and in such cases no narrow or illiberal construction should be given to the words of the fundamental law in which they are embodied. Without straining either the constitution of the United States or the well-settled rules of the common law, we have come to the conclusion that the sentence of the circuit court under which the petitioner is held a prisoner, was pronounced without authority, and he should therefore be discharged."

And the court held —

"The doctrine of this court affirmed, and the cases in support of it cited, that where a prisoner shows that he is held under a judgment of a federal court, made without authority of law, the supreme court will, by writs of *habeas corpus* and *certiorari,* look into the records, so far as to ascertain that fact, and if it is found to be so, will discharge the prisoner."

The sole purpose of the *certiorari* in such proceedings is to bring the record under which the imprisonment is charged, for examination. This case and the authorities cited in the opinion, clearly show that under the constitution and laws of the United States, the court may, in proceedings in *habeas corpus*, look into the judgment of another court in a criminal case, and if it is found that such court had no authority to render the judgment, release the prisoner. By the practice of the courts of this state, the petitioner must produce the record if he desires the court to examine it.

The *habeas corpus* act of New York is as follows:

"Every person committed, detained, confined, or restrained of his liberty for any criminal or supposed criminal matter under any pretense whatsoever (except as hereafter mentioned), may prosecute a writ of *habeas corpus* to inquire into the cause of such imprisonment or restraint. The following persons shall not be entitled to prosecute such writ:

"1. Persons committed or detained by virtue of any process issued by any court of the United States," etc.

"2. Persons committed or detained by virtue of the final

judgment or decree of any competent tribunal of civil or criminal jurisdiction, or by virtue of any execution issued upon such judgment or decree," etc.

Under this statute many decisions of the courts of that state have been rendered, the latest of which is *The People, ex rel. William M. Tweed, v. Liscomb, Warden, &c.,* 60 N. Y. 559. Tweed, the relator, was confined in the penitentiary of which the defendant was warden. At a court of oyer and terminer, held in and for the city and county of New York, the relator was tried upon an indictment containing two hundred and twenty separate counts, each charging a misdemeanor, and on a trial was found guilty on two hundred and four of the counts. Upon twelve of the counts the court sentenced him to twelve successive terms of imprisonment of one year each, and to fines of $250 each; upon other counts to additional fines, amounting in all to $12,500. The maximum punishment fixed by the statute under which he was indicted, is one year's imprisonment and a fine of $250. A commitment was issued, and he was confined in the penitentiary, and having been there one year and paid one fine of $250, he made application for a writ of *habeas corpus* to inquire into the legality of his continued imprisonment. The court, by Allen, J., says:

"The history of the writ is lost in antiquity. It was in use before *magna charta,* and came to us as a part of our inheritance from the mother country, and exists as a part of the common law of the state. It is intended and well adapted to effect the great object secured in England by *magna charta,* and made a part of our constitution, that no person shall be deprived of his liberty 'without due process of law.' This writ cannot be abrogated, or its efficiency curtailed, by legislative action. Cases within the relief afforded by it at common law cannot, until the people voluntarily surrender the right to this, the greatest of all writs, by an amendment of the organic law, be placed beyond its reach and remedial action. The privilege of the writ cannot even be temporarily suspended, except for the safety of the state, in cases of rebellion or invasion. The remedy against illegal imprisonment afforded by this writ, as it was known and used at common law, is placed beyond the pale of legislative discretion, except that it may be suspended when public safety requires. . . .

"Persons committed or detained by virtue of the final judgment or decree of any competent tribunal of civil or criminal jurisdiction, or by virtue of any execution issued upon such judgment or decree, are expressly excluded from the benefit of this act. (2 R. S. 563, §22.)   And if, upon the return of the writ, it appears that the party is detained in custody by virtue of such judgment or decree, or any execution issued thereon, he must be remanded. (Id. 567, §40.)   Such persons are deprived of their liberty 'by due process of law,' and are not within the purview of the constitution, or the purposes of the writ.   To bar the applicant from a discharge from arrest by virtue of a judgment or decree, or an execution thereon, the court in which the judgment or decree is given must have had jurisdiction to render such judgment.   The tribunal must be competent to render the judgment under some circumstances. The prohibition of the forty-second section of the *habeas corpus* act, forbidding the inquiry, by the court or officer, into the legality of any previous judgment, decree or execution specified in the twenty-second section, does not and cannot, without nullifying in good measure the provisions of that and other sections of the act, take from the court or officer the power, or relieve him from the duty, of determining whether the process, judgment, decree or execution emanated from a court of competent jurisdiction; and whether the court making the judgment or decree, or issuing the process, had the legal and constitutional power to give such judgment, or send forth such process.   It simply prohibits the review of the decision of a court of competent jurisdiction.   If the record shows that the judgment is not merely erroneous, but such as could not under any circumstances or upon any state of facts have been pronounced, the case is not within the exception of the statute, and the applicant must be discharged.   If the judgment is merely erroneous, the court having given a wrong judgment when it had jurisdiction, the party aggrieved can only have relief by writ of error, or other process of review.   He cannot be relieved summarily by *habeas corpus.*

"The inquiry is necessarily in every case whether the process is void, and the officer or court having jurisdiction of the writ must pass upon it.   If a process good in form issued upon a judgment of a court having jurisdiction, either general or limited, must in all cases be assumed to be valid until the judgment be reversed upon error, the remedy by writ of *habeas corpus* will be of but little value."

Tweed was released from imprisonment, the court hold-

ing that the court rendering the judgment had exceeded its authority. In this case, under constitutional and statutory provisions substantially like ours, that court laid down the following rules in relation to writs of *habeas corpus* and the powers and duties of courts thereunder, which may well be adopted in this state:

"The right to relief from unlawful imprisonment through the instrumentality of the writ of *habeas corpus* is not the creation of any statute, but exists as part of the common law of the state.

"The writ cannot be abrogated, or its efficiency impaired, by legislative action, and cases within the relief afforded by the writ at common law cannot, under the state constitution, be placed beyond its reach.

"The various statutes relating to the writ have not been intended to detract from its force, but to add to its efficiency.

"The provision of the *habeas corpus* act excluding from its benefits persons committed or detained by virtue of the judgment or decree of a 'competent tribunal,' only applies where the tribunal had jurisdiction to render the judgment under some circumstances.

"The prohibition contained in said act forbidding an inquiry, upon return to writ, into 'the legality and justice of any process, judgment, decree, or execution,' specified in the provision above referred to, does not take from the court or officer having jurisdiction of the writ the power, or relieve from the duty, of determining whether the judgment or process emanated from a court of competent jurisdiction, and whether the court had the power to give the judgment or issue the process.

"Jurisdiction of the person of the prisoner and of the subject-matter is not alone conclusive, but the jurisdiction of the court to render the particular judgment is a proper subject of inquiry; and while the court or officer cannot, upon return to the writ, go behind the judgment and inquire into alleged errors and irregularities preceding it, the question is presented and must be determined whether, upon the whole record, the judgment was warranted by law, and was within the jurisdiction of the court.

"The presumption in favor of the jurisdiction of a court of general jurisdiction is not conclusive, but is one of fact, and may be rebutted.

"Where the jurisdiction depends upon certain facts, and

the court has passed upon those facts, its determination is con-
clusive until reversed or set aside."

In *Ex parte Summers*, 7 Pa. Law Journal, 107, it was held
that where a court imposes a fine or imprisonment for a con-
tempt, and the court does not state the facts constituting the
contempt, no other court can reverse its decision.   But if the
court does state the facts upon which it proceeds, a revising
tribunal may, on a *habeas corpus*, discharge the party if it ap-
pear that the facts do not amount to a contempt.

In *The People v. Hackley*, 24 N. Y. 75, the prisoner was
confined for a contempt in refusing to answer questions before
a grand jury, basing his refusal on the ground that any answers
he might make would "tend to accuse him of crime."   The
court, by Denio, J., says:

" As a general rule, the propriety of a commitment for con-
tempt is not examinable in any other court than the one by
which it was awarded.   This is especially true where the pro-
ceeding by which it is sought to be questioned is a writ of
*habeas corpus;* as the question of the validity of the judg-
ment then arises collaterally, and not by way of review.   The
*habeas corpus* act, moreover, declares that where the detention
of the party seeking to be discharged by *habeas corpus* appears
to be for any contempt, plainly and specially charged in the
commitment, ordered by a court of competent jurisdiction, he
shall be remanded to the custody in which he was found.   But
this rule is of course subject to the qualification, that the con-
duct charged as constituting the contempt must be such that
some degree of delinquency or misbehavior can be predicated of
it; for if the act be plainly indifferent or meritorious, or if it
be only the assertion of the undoubted right of the party, it
will not become a criminal contempt by being adjudged to be
so.   The question whether the alleged offender really com-
mitted the act charged will be conclusively determined by the
order or judgment of the court; and so with equivocal acts
which may be culpable or innocent according to circumstances;
but where the act is necessarily innocent or justifiable, it would
be preposterous to hold it a cause of imprisonment."

Under the authorities before cited, and on principle, we
think that § 671 of the statute does not prohibit one court, by
and under proceedings in *habeas corpus*, from examining the

judgment or commitment for contempt of another court under which a person is restrained of his liberty; and if on such examination it appears, and the record shows, that the court rendering the judgment was without jurisdiction to render it under some circumstances, or if the charge on which the petitioner is convicted and imprisoned does not constitute an offense for which punishment can be inflicted, or that the court has rendered a judgment which it had no authority to render, or has exceeded its authority, from discharging the petitioner from imprisonment.

Do the facts found by the court and embodied in the judgment constitute a contempt of court? The substance of the charge and facts found is, that the petitioner was under a recognizance to appear in court for trial upon criminal charges pending against him therein; that he did not appear during the term to which he was recognized, and absented himself from the county and kept himself so that he could not be found by the officers of the court, intending thereby to obstruct the court in proceeding with his trial.

To constitute a direct contempt of court there must be some disobedience to its order, judgment or process, or some open and intended disrespect to the court or its officers in the presence of the court, or such conduct in or near the court as to interrupt or interfere with its proceedings, or with the administration of justice.

To constitute a constructive contempt of court, some act must be done, not in the presence of the court or judge, that tends to obstruct the administration of justice, or bring the court or judge or the administration of justice into disrespect.

The petitioner violated no order, direction or judgment of the court, nor was he at large by direction or order of the court. He had entered into a recognizance as the statute permitted him to do, by which he bound himself to the state, to appear in court at the time and term of the court stated in the recognizance, and submit to a trial of the criminal charges therein pending against him. He did not appear in the court

44—32 KAS.

as required by the recognizance, and absented himself from the county in which the court was held. The extent of his offending was in not appearing in court and submitting to the trial as he had bound himself to do by the recognizance, and in absenting himself from the county where the court was held. The statute (Comp. Laws of 1879, ch. 82, § 65) provides that when a person under recognizance in any criminal proceeding shall fail to perform the condition of such recognizance, his default shall be recorded and proceedings entered upon the recognizance, and this entry must necessarily be made and these proceedings be taken under the direction of the court, and so far as the statute provides, the authority of the court to direct proceedings then ends. The only penalty imposed by law on the petitioner for his non-appearance, pursuant to the terms of the recognizance, was the forfeiture and prosecution of the recognizance. We think that his non-appearance in court during the term for which he was recognized to appear and his absenting himself from the county, were not a contempt of court, and that the charge against him on which he was convicted and is now imprisoned did and does not constitute such an offense as renders him liable to punishment beyond the punishment provided by the statute; and as there was no offense, there could be no lawful conviction, and the court had no jurisdiction to render any legal judgment, and the judgment rendered is void, and the imprisonment of the petitioner under it is unlawful.

The only case within our knowledge bearing upon the question whether the acts or omissions of the petitioner were a contempt of court, is *Ingle v. The State,* 8 Blackf. 574. In that case a party was indicted, and bound by his recognizance to appear and answer the charge. He was advised by an attorney "that, if he could not procure a continuance on affidavit, he could escape and forfeit his recognizance, which would work a continuance of the cause to the next term, at a trifling cost." *Held,* That the attorney, for giving such advice, was not guilty of a contempt of court. If an attorney, who is an officer of

the court, can give such advice and not be in contempt, surely the client who acts upon the advice cannot be guilty, and if the accused under such circumstances, certainly a party whose only offense is absenting himself from the court on his own volition, cannot be guilty of a contempt of court.

The petitioner could have taken proceedings in error in this court, and thereby relieve himself from this void judgment and illegal imprisonment, but that is not his only remedy. The proceedings by *habeas corpus* are proper, and he is entitled to be discharged from imprisonment under them.

The order is, that the petitioner be discharged from the arrest and imprisonment of which he complains in his petition for the writ issued.

VALENTINE, J.: I concur in the conclusion reached in this case, but I am not sure that I concur in everything that is said by our Brother HURD. The principles on which I concur are as follows:

1. In the absence of anything to the contrary, it will always be presumed in favor of a court of general and superior juris-, diction, that it had jurisdiction to make the order or render the judgment which it did in fact make or render.

2. Where the jurisdiction of the court depends upon the existence of certain facts, and the court upon proper issues and evidence has found such facts to exist, its determination will be conclusive until reversed or set aside in a direct proceeding.

3. Generally, however, it may be shown even in a collateral proceeding that the jurisdictional facts in the particular case were such that the court did not have jurisdiction to make the order or render the judgment which it did in fact make or render.

4. A judgment rendered or order made with jurisdiction is always valid until reversed or set aside, although the judgment or order may be ever so irregular and erroneous, or founded upon proceedings ever so irregular and erroneous.

5. But a judgment rendered or order made without jurisdiction is utterly void.

6. A judgment rendered or order made in excess of jurisdiction is utterly void to the extent of the excess.

7. Where the record of a judgment or order shows upon its face that the judgment was rendered or the order made without jurisdiction or in excess of jurisdiction, such judgment or order is void upon its face.

8. A failure of a party to appear at court in obedience to a criminal recognizance is not a punishable contempt.

9. A punishable contempt may arise from a willful disregard or disobedience of some judgment, or order, or process of the court, or from some willful act tending to obstruct the administration of justice, or tending to bring the court or its officers into disrespect; but a punishable contempt can never arise from a mere failure or refusal on the part of a party to perform some duty resting upon no other foundation than merely the party's own undertaking or recognizance.

10. The failure or refusal of a party to be ready in court to try his case when it is called, may to some extent hinder, delay or obstruct the administration of justice, but it does not constitute a punishable contempt.

11. A judgment or order founded upon no other ground than that such a failure or refusal is a punishable contempt, is utterly void.

12. Where a person is imprisoned in pursuance of a merely voidable judgment or order, or a judgment or order rendered or made by a court which had the jurisdiction in the particular case to render or make the same, he cannot be released upon *habeas corpus*, even if the judgment or order were ever so irregular and erroneous, or were founded upon proceedings ever so irregular and erroneous.

13. But where a person is imprisoned in pursuance of a void judgment or order, he may be released upon *habeas corpus*.

14. The judgment rendered in this case by the court below is utterly void, and is void upon its face.

HORTON, C. J., concurring.

## In re George Kessler.

*Per Curiam:* This case is substantially the same as the case *In re Dill,* just decided; and on the authority of that case the petitioner is entitled to be discharged from the arrest and imprisonment complained of in his petition for the writ of *habeas corpus,* and the order is that he be discharged.